IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CPIF LENDING, LLC, | : | |
|       Plaintiff, | : | CIVIL ACTION |
| | : | No. 18-2049 |
| v. | : | |
| | : | |
| CHESTNUT HILL HCP I, LLC, et al. | : | |
|       Defendants. | : | |
| | : | |
| | : | |

**McHUGH, J.**                                                                                                                                       **July 6, 2020**

**MEMORANDUM**

      This is a mortgage foreclosure action in which a receiver was appointed to marshal the assets of the debtor's estate. As part of that receivership, all litigation against the debtor was stayed. This action has been pending for more than two years, with the receivership extended multiple times. Petitioner Ameerah Boggs now seeks relief from the stay to pursue claims in state court against one of the Defendant facilities, alleging that her father suffered injuries there leading to his death. Plaintiff CPIF Lending, LLC, ("CPIF") opposes this relief. For the reasons that follow, Petitioner's motion will be granted and the stay lifted as to Petitioner's lawsuit in state court.

**I.**     **Relevant Background**

      CPIF seeks to foreclose on a mortgage with Defendants after their alleged default. (Compl. ¶ 1.) In furtherance of those efforts, CPIF exercised rights under the mortgage to seek appointment of a receiver that would secure money owed to CPIF by Defendants and manage the mortgaged property. (Pl.'s Mot. for Appointment of a Receiver ¶¶ 27-30, ECF 3.) By Order dated May 22, 2018, this Court appointed The Long Hill at Wyndmoor, LLC, as receiver of the mortgaged property, leaving Defendants as the "licensed operator legally responsible for the

Facility, subject, however, to the provisions of [the] Order." (Order Appointing Receiver ¶ 1, ECF 9.) As pertinent here, the Order imposed a stay of litigation that enjoined claims predating the receivership and tolled any unexpired statutory or contractual periods of limitation while the Order remains in effect. (*Id.* ¶ 28.)

The Order also required the receiver to provide the Court, as well as the parties, with "monthly written reports setting forth, among other things, the gross income from the operation and/or sale of the Mortgaged Property and the expenditures made by the receiver in connection with its duties and obligations" under the Order. (*Id.* ¶ 6.) The latest status report notes that Defendants' assets were sold on November 15, 2019, under a set of agreements with the new operator of the facilities, and the receiver is now working "to wind down the receivership." (Report of Long Hill at Wyndmoor, LLC, Dated June 15, 2020, at 1, ECF 92.) To accomplish that task, the receiver is working with the new operator to reconcile various costs and expenditures. (*Id.* at 1-2.) The report also states that approximately $17,000 of accounts receivable remains to be collected, approximately $35,000 of accounts payable remains to be paid, and "[a]s of June 10, 2020, the cash book balance was $116,363." (*Id.* at 2.)

**II.    Discussion**

Petitioner seeks to lift the stay in order to pursue claims of negligence arising out of the death of her father while in the care of Defendants Wyndmoor Hills Health Care Center, LLC, and Skyline Healthcare, LLC. (Pet'r's Mot. for Relief from Stay ¶ 1, ECF 89.) Additionally, Petitioner offers to limit her claim to the extent of any applicable insurance coverage. (*Id.* ¶ 2.) CPIF Lending opposes Petitioner's efforts to lift the stay, asserting that the receivership estate will be harmed if Petitioner is allowed to proceed because the estate "would bear the burden of a $50,000 self-insured retention." (Pl.'s Obj. to Pet'r's Mot. for Relief from Stay ¶ 1, ECF 91.)

In this Circuit, the controlling standard for lifting the stay of an equitable receivership is set forth in *United States. v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005). That standard requires a district court to evaluate three factors when deciding whether to grant a request to lift a stay of litigation: "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim." *Id.* (quoting *S.E.C. v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984) ("*Wencke II*")). These factors assist the district court in balancing the need to give receivers "a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant" while also ensuring "that litigants are not denied a day in court during a lengthy stay." *Id.*

### A. Petitioner's underlying claim is colorable.

For practical purposes, the Court of Appeals has framed this factor as a gatekeeping function, stating that claims lacking merit on their face "may end the matter," while meritorious claims require the district court to assess the other factors of the analysis. *Id.* When assessing the merits of the underlying claim, the Court of Appeals has stressed that a "district court need only determine whether the party has *colorable* claims to assert which justify lifting the receivership stay." *Id.* at 444 (emphasis in original).

Based on the record before me, I conclude that the allegations of Petitioner's state court complaint easily satisfy this factor. In the complaint, Petitioner alleges that her father, Gary Boggs, was admitted to Wyndmoor Hills Health Care Center in late November 2016. (Mot. for Relief from Stay, Ex. A ¶ 10, ECF 89-1.) Just over a month later, he developed a large and

severe decubitus ulcer[1] along his sacrum, buttocks, and perineum that required extensive treatment at Chestnut Hill Hospital for several days, after which he was discharged home for care by Petitioner.  (*Id*. ¶¶ 12-15.)  Over the next several weeks, Mr. Boggs was in and out of Einstein Medical Center for various infections, eventually resulting in his death in February 2017 due to anoxic brain injury and cardiac arrest.  (*Id*. ¶¶ 16-18.)  According to the complaint, just before Mr. Boggs's death, the Pennsylvania Department of Health conducted an investigation that concluded he had acquired the ulcer under the care of Wyndmoor Hills.  (*Id*. ¶ 19.)  These are serious allegations and the underlying complaint capably states a claim for professional negligence.  Petitioner's underlying claims are certainly "colorable" and I will therefore proceed with an assessment of the remaining two factors.

### B. The balance of interests weighs in Petitioner's favor.

The *Acorn Tech* analysis next requires me to determine "whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed."  429 F.3d at 443.  On the record before me, I conclude that this prong of the analysis weighs in favor of Petitioner because she will suffer substantial injury as a result of the case getting stale, while the receivership will be minimally harmed by lifting the stay.  Contrary to CPIF's assertion, applicable statutes of limitations are not the only thing that imperil Petitioner's claims.  The events in question took place in late 2016, purportedly resulting in the death of Mr. Boggs in early 2017.  By their nature, tort claims erode over time as memories fade,

---

[1] Petitioner's complaint further alleges that Mr. Boggs's treating physician noted in his assessment and treatment plan that the ulcer was so large and so "deep to the bone and deep to the local structures" that it posed a significant "treatment challenge" since it would be difficult to eliminate the resultant bone infection if the wound could not be closed.  (ECF 89-1 ¶ 14.)

witnesses become harder to locate or make themselves available, and evidence disappears. In addition, family members cannot find closure as litigation languishes.

In contrast, I am not persuaded by CPIF's showing as to the deductible or self-insured retention it says must be paid if Petitioner's claims proceed, because CPIF's assertions on this point are, at best, vague and contradictory. As an initial matter, I am concerned by what appears to be inordinate delay and evasiveness in establishing the terms of the applicable coverage.[2] Even now, CPIF has not supplied the applicable insurance policy, pointing instead to a Deposit and Escrow Agreement between the receiver and insurer to secure a professional liability insurance policy that appears to require a $50,000 deposit in the event of a claim. (Pl.'s Obj. to Pet'r's Mot. for Relief from Stay Ex. A, at 2, ECF 91-1). All the same, it is not clear that a deductible or self-insured retention is required in the event of a claim. Rather, the terms of the Agreement suggest that its purpose is to require a form of bond that backs the receiver's obligations to the insurer in the event those obligations are not fulfilled—funds the insurer has agreed to return to the receiver once it "determines that all obligations due and owing are fully and finally extinguished." (*Id.*)

Even if the Agreement required an expenditure of $50,000 from the Defendants or the estate assets, I conclude it would not substantially impact the estate's assets or the Receiver's ability to manage them—especially in light of Petitioner's preemptive limitation of claims to the

---

[2] CPIF's failure to attach the applicable liability insurance policy to its Objections is troubling for a number of reasons. First, CPIF refers to the purported obligation to pay $50,000 if Petitioner is allowed to assert her claim as both a self-insured retention and a deductible. (*Compare* ECF 91 ¶ 1 *with id.* ¶ 7.) Though, in the final analysis, both obligations require the insured to pay, they are distinct mechanisms with different implications for how and when coverage is triggered in the event of a claim. Additionally, the Deposit and Escrow Agreement itself makes reference to "liability insurance policy #NSC100115" (ECF 91-1, at 2) which I cannot evaluate because CPIF has not provided it. Finally, CPIF has previously taken the position that a deductible was required under a liability policy, leading me to deny an earlier petition to lift the stay, only to learn on reconsideration that no such provision existed. (*See* Order Granting Mot. for Recons. of the Estate of Fannie Dillard's Mot. for Relief from Stay, at 1, ECF 58.)

applicable insurance policy. And weighing the seriousness of Petitioner's underlying claim against CPIF's desire to collect on its loan, I would still exercise my discretion to lift the stay. That analysis carries particular weight at this stage of the case, which leads to a discussion of the final factor.

### C. The timing of the request favors Petitioner.

The Court of Appeals has cautioned that the inquiry into the timing of a request to lift a litigation stay is "inherently fact-specific."[3] *Acorn Tech*, 429 F.3d at 450. Early in the receivership's existence, even meritorious claims may not warrant lifting the stay, while claims made later—when the receiver has completed much of the work—are to be given more weight. *Id*. at 443-44. Put simply, "[t]he receivership cannot be protected from suit forever." *Id*. at 450 (quoting *Wencke II*, 742 F.2d at 1231). The receivership here has been in place for more than two years, and the receiver asserts that its efforts are nearly completed. Moreover, the Court has made numerous accommodations to facilitate the receiver's efforts, including multiple extensions of time.[4] The receiver has therefore had ample time to get the estate's affairs in order. Bearing that in mind, and viewed against Petitioner's showing under the two preceding factors, I conclude that Petitioner's request to lift the stay at this point in the proceedings is reasonable and should be approved.

---

[3] For that reason, the "law of the case" doctrine invoked by CPIF has no applicability here. Under *Acorn Tech*, to rely upon an equitable ruling entered more than a year ago involving a different petitioner would be patent error.

[4] CPIF has filed motions four separate motions seeking a six-month extension of the receivership, asserting each time that the extension was necessary to facilitate the receiver's ability to satisfy its obligations under the Court's original Order (ECFs 33, 53, 76, and 86) and each of those motions was granted promptly (ECFs 37, 55, 78, and 88).

### III.     Conclusion

For the reasons set forth above, Petitioner's Motion will be **GRANTED**.  An appropriate Order follows.

/s/ Gerald Austin McHugh
United States District Judge